**NOT FOR PUBLICATION**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and | : | |
| STATE OF NEW JERSEY, | : | Civil Action No. 03-4625 |
| | : | |
| Plaintiffs, | : | **OPINION** |
| | : | |
| v. | : | |
| | : | |
| SUNOCO, INC. (R&M), | : | |
| | : | |
| Defendant. | : | |

**Appearances:**

Annette M. Lang, Esquire
United States Department of Justice
PO Box 7611
Washington, DC 20044-7611

Leslie A. Kirby-Miles, Esquire
United States Environmental Protection Agency
   Attorneys for Plaintiff United States of America

Scott B. Dubin, Esquire
Department of Law and Public Safety
Division of Law
PO Box 93
Trenton, New Jersey 08625-0093
   Attorney for Plaintiff State of New Jersey

Raymond N. Pomeroy, II, Esquire
Robert Brager, Esquire
Amy M. Lincoln, Esquire
Beveridge & Diamond, P.C.
26 Franklin Street
Tenafly, New Jersey 07670-2515
   Attorneys for Defendant

**RODRIGUEZ**, **Senior United States District Judge.**

Presently before the Court are two motions by the Defendant: (1) A Petition for Review of the Plaintiffs' August 2006 Position Letter in which Plaintiffs reject Defendant's assertion of the <u>force</u> <u>majeure</u> defense, and (2) A Motion to Seal documents attached to Plaintiffs' briefs in response to Defendant's Petition for Review pursuant to Local Civil Rule 5.3(c). The Court has considered the submissions of the parties and for the reasons that follow finds that Defendant has waived the defense of <u>Force</u> <u>Majeure</u> because it did not substantially comply with the notice provisions contained in the Consent Decree. Additionally, the Court denies without prejudice Defendant's motion to seal.

**BACKGROUND AND PROCEDURAL HISTORY**

Defendant Sunoco, Incorporated (hereinafter "Sunoco" or "Defendant") and Plaintiffs, the respective Environmental Protection Agencies of the United States of America and the State of New Jersey (hereinafter, the "Governments" or "Plaintiffs") are parties to a Consent Decree filed with this Court on December 2, 2003[1]. Generally, the Consent Decree required the reduction of emissions from the Coastal Eagle Point Plant in Westville, New Jersey by June 30, 2005 (hereinafter, "the deadline"). Sunoco did not meet this deadline and has invoked two defenses which Sunoco submits excuses its noncompliance; ¶ 86 Commercial

---

[1]The Consent Decree filed with the Court on December 2, 2003 was between the Governments and the Coastal Eagle Point Company (hereinafter "CEPOC"). After the Consent Decree was filed, Sunoco purchased the Coastal Eagle Point Plant in Westville, New Jersey from CEPOC. On March 15, 2004, the Court granted the parties Joint Motion for a Stipulated Order to substitute Sunoco for CEPOC as the Defendant in this matter.

2

Unavailability and ¶ 150 <u>Force Majeure</u>.  On August 9, 2006, this Court issued an Opinion[2] finding that Sunoco was not entitled to relief under the Commercial Unavailability clause for its failure to meet the deadline.[3]   The Court further determined that Sunoco's claim of Force Majuere was not ripe for review, as Sunoco had not invoked the dispute resolutions proceedings of the Consent Decree with respect to that defense.[4]

On October 31, 2006, Sunoco filed the instant Petition for Review with the Court, asserting that the unavailability of a Flare Gas Recovery System (hereinafter "FGRS") of sufficient capacity created a <u>force majeure</u> situation barring the stipulated penalties imposed by the Governments.[5]   On December 15, 2006, the Governments concurrently filed their response to Sunoco's Petition with a joint motion to conditionally seal the response.  The

---

[2] The Court found that Sunoco's inability to timely comply with Paragraphs 37 and 38(a) of the Consent Decree was not the result of commercial availability as defined by the Consent Decree, holding that there is no temporal element to commercial unavailability.  <u>United States v. Sunoco</u>, No. 1:03 CV 4625, 2006 U.S. Dist. LEXIS 58656 at *20-21 (D.N.J. Aug. 9, 2006).

[3] The parties in this matter have incorporated by way of reference arguments and factual assertions contained in their briefs submitted in support of the motions relating to the August 9, 2006 Opinion.  To the extent necessary, the Court will refer to these incorporations as Defendant's 2006 Petition (hereinafter "Def. 2006 Pet."), Plaintiffs' 2006 Motion to Enforce (hereinafter "Pls. 2006 Mot."), and Defendant's 2006 Opposition Brief (hereinafter "Def. 2006 Opp.").  Likewise, the Court hereby incorporates the relevant "Background" portion of the August 9, 2006 Opinion.

[4] In so finding, the Court did not reach the question of whether Sunoco substantially complied with the notice provisions of the <u>Force Majeure</u> Clause contained in ¶¶150-151.

[5] In their August 25, 2006 Position Letter (hereinafter the " August Position Letter" or "Aug. 2006 Pos. Ltr."), the Governments' assessed penalties in the amount of $744,000 for the period between July 1, 2006 and August 6, 2006.  <u>See</u> Aug. 2006 Pos. Ltr. at p.3.

Governments' response, which attached certain exhibits provided to the Governments by Sunoco under the auspices of confidential business information, was conditionally placed under seal, pursuant to L.Civ.R. 5.3(c), until Sunoco filed its own motion to seal.  On January 9, 2007, Sunoco filed its motion to seal.   Before deciding the merits of Sunoco's motion to seal, the Court will address the merits of Sunoco's Petition for Review.

## I. SUNOCO'S PETITION FOR REVIEW

Sunoco is seeking a review of the Governments' August 25, 2006 Position Letter, which rejects Sunoco's assertion of <u>force majeure</u> as a basis for excused noncompliance with the deadline.[6]  In the Position Letter, the Governments advance three reasons why Sunoco's <u>force majeure</u> defense fails: "(a) Sunoco failed to comply with the notice required for invoking force majeure under the Consent Decree and that failure renders Sunoco's <u>force majeure</u> claim void; (b) Sunoco failed to satisfy its burden of proving an event or occurrence that constitutes <u>force majeure</u>; and (c) Sunoco failed to satisfy its burden of proving that it could not have prevented the delay by the exercise of due diligence. Consent Decree ¶¶ 150,151,155"; Aug. 2006 Pos. Ltr. ¶3(A)(2).  In this Petition for Review, Sunoco claims that: (1) The unavailability of a FGRS of sufficient size meets the definition of <u>force majeure</u> because it is the direct result of the delay and was out of Sunoco's control; (2) Sunoco has demonstrated due diligence in remedying the problem;

---

[6]Where the parties are unable to resolve a dispute during an informal negotiation period, Paragraph 163 of the Consent Decree requires the Governments to submit a letter to Sunoco detailing the Governments position with respect to the dispute.

4

(3) Sunoco's noncompliance was not foreseeable, and; (4) Sunoco's invocation of the force majeure clause was timely.  See, generally, Def. Pet. for Rev.

**A.     Standard of Review**

Two standards govern the Court's review of Sunoco's Petition.  As to legal issues, the Court's review is plenary.  McDowell v. Philadelphia Hous. Auth., 423 F.3d 233, 238 (3d Cir. 2005).  Plenary review requires courts to "discern the scope of a consent decree by examining the language within its four corners."  United States v. New Jersey, 194 F.3d 426, 430 (3d Cir. 1999) (quoting Harris v. City of Philadelphia, 137 F.3d 209, 212 (3d Cir. 1998)).

Any factual determinations made by the governments are reviewed for substantial evidence.  Consent Decree at ¶ 163.  The governments bear the burden of proving, with substantial evidence in the administrative record, the reasonableness of their denial.  Id. Thus, the Court must consider whether there is substantial evidence to support the Governments' conclusions that Sunoco did not satisfy its burdens prescribed by the Consent Decree.

**B.  Sunoco's Assertion of Force Majeure**

The Consent Decree governing the parties in this case contains a force majeure clause. Parties to a consent decree are governed by the contents of that decree.  A consent decree is voluntarily undertaken; therefore, "a party to a consent decree, having made a 'free, calculated and deliberate choice to submit to an agreed upon decree rather than seek a more favorable litigated judgment' bears a burden which 'is perhaps even more formidable than had [it]

litigated and lost.'" <u>United States v. Wheeling-Pittsburgh Steel Corp.</u>, 818 F.2d 1077, 1088

(3d Cir. 1987) (quoting <u>United States v. ITT Cont'l Baking Co.</u>, 420 U.S. 223, 236-37

(1975)).  Section 14 of the Consent Decree in this case governs claims of <u>force</u> <u>majeure</u> and

states:

> If any event occurs which causes or may cause a delay or impediment to performance in complying with any provision of this Consent Decree, **CEPOC shall notify EPA and NJEPA in writing as soon as practicable, but in any event within 10 business days of the date when CEPOC first knew of the event or should have known of the event by the exercise of due diligence.**  In this notice, CEPOC shall specifically reference this paragraph of this Consent Decree and describe the anticipated length of the time delay may persist, the cause or causes of the delay, and the measures taken or to be taken by CEPOC to prevent or minimize the delay and the schedule by which those measures are implemented. CEPOC shall take all reasonable steps to avoid or minimize such delays.  The notice required by this section shall be effective upon the mailing of the same by certified mail, return receipt requested, to EPA specified in ¶ 190 (Notice).

Consent Decree at ¶ 150 (emphasis added).

The Consent Decree confers upon Sunoco the burden of demonstrating that the "delay

or impediment to performance" (1) "has been or will be caused by circumstances beyond the

control of [Sunoco]" and (2) "that the delay could not have been prevented by [Sunoco] by

the exercise of due diligence."<u>Id.</u> at ¶ 154.  Pursuant to Paragraph 152 of the Consent Decree

"[f]ailure by Sunoco to substantially comply with the notice requirements of Paragraph 150

as specified above shall render this Section XIV (<u>Force</u> <u>Majeure</u>) voidable by the Untied

States, in consultation with the NJDEP".  Indeed, the Third Circuit has found that failure to

6

give adequate notice is fatal to a claim of <u>Force Majeure</u>. <u>See</u>, <u>United States v. Wheeling-Pittsburgh Steel Corp.</u>, 818 F.2d 1077, 1088 (3rd Cir. 1987)(failure to give adequate notice of force majeure rendered that defense unavailable to defendant).  Thus, in order for Sunoco to prevail on its force majeure claim, it must satisfy the burden of proving that (1) it substantially complied with the notice provisions; (2) that its inability to comply with the deadline was due to circumstances beyond its control; and ;(3) that it "could not have prevented the delay by exercise of due diligence".  Consent Decree at ¶ 154.

Without determining whether the unavailability of an FGRS of an appropriate size constitutes a force majeure event under this Consent Decree, the Court finds that Sunoco's failure to properly invoke the force majeure clause bars it from asserting that clause to excuse its noncompliance with the deadline.

Sunoco advances several arguments regarding the timeliness of its notice of force majeure to the Governments.  First, Sunoco claims that the notice was timely as it was submitted on June 3, 2005, one day after the Governments, by letter dated June 2, 2005, reneged on an agreement to extend the June 30, 2005 compliance date set forth in the Consent Decree.  Def. Pet. at 34.  Second, Sunoco alleges that, notwithstanding the timing of the formal June 3, 2005 notice, the Governments had actual notice of Sunoco's force majeure problem well before Sunoco submitted its formal notice on June 3, 2005. Id. at 36-37.  Finally, Sunoco asserts that the Governments have not suffered any prejudice as a result of an allegedly untimely notice.  Accordingly, the issue before this Court is whether Sunoco's

January 14, 2005 notice and/or June 2, 2005 notice substantially complied with the <u>force majeure</u> notice provisions delineated in Paragraph 150 of the Consent Decree.

The parties have not submitted, and the Court is unaware of, any cases in this Circuit which address the adequacy of a <u>force majeure</u> notice submitted well after the prescribed time-period. The one case recognized by the parties and this Court to provide guidance as to the issues in this case does not deal with the timing of the notice, but rather the contents of the notice. In <u>Wheeling-Pittsburgh Steele</u>, the defendant, a steel manufacturer, owned and operated several plants in three states, including a "Sinter Plant" in West Virginia. Like the case at bar, in <u>Wheeling -Pittsburgh Steele</u>, a consent decree was entered into by all of the parties which set out certain deadlines for compliance, requiring the Sinter Plant to install certain emission control equipment. <u>Id</u>. at 1080. The defendant invoked the <u>force majeure</u> clause of the consent decree, citing a 98 day labor strike at the Sinter Plant, and was granted an extension of the compliance deadlines. <u>Id</u>. On review, the Third Circuit expressly found that none of the defendant's <u>force majeure</u> notices were adequate because they failed to specifically reference the "Sinter Plant." <u>Id</u>. at 1088. In so finding, the Court stated that "the defendant could not rely on the effect of the strike to excuse non-compliance." <u>Id</u>. Other Courts have similarly held that failure to provide proper notice vitiates a claim of force majeure. <u>See</u> <u>United States v. Rueth Dev. Co.</u>, 335 F.3d 598, 606 (7th Cir. 2003)(failure to provide written notice of force majeure by defendant to an environmental consent decree resulted in waiver or right to obtain extension of deadline); <u>United States v. Alshabkhoun</u>, 227

F.3d 930, 936(7th Cir. 2002)(entitlement to a consent decree extension defeated by failure to comply with force majeure notice requirements); <u>Resources Inv. Corp. v. Enron Corp.</u>, 669 F.Supp. 1038, 1043-1044 (D. Colo. 1987)(failure to comply with force majeure notice requirements was fatal to claim).

However, failure to give written notice of force majeure within the time frame prescribed may not always result in waiver of the defense where the defendant substantially complied with the notice provisions.  In <u>Toyomenka Pacific Petroleum v. Hess oil Virgin Islands Corp.</u>, 771 F. Supp. 63 (S.D.N.Y. 1991), the parties to a consent decree contracted to exact the sale of oil within a specific time frame.  Defendant missed the deadline for the transaction, due to Hurricane Hugo, and asserted that the hurricane created a <u>force majeure</u> situation excusing it from liability for demurrage.  <u>Id</u>. at 66.  The <u>force majeure</u> clause of the consent decree in <u>Toyomekna</u> provided for notice of <u>force majeure</u> within forty eight hours of such an event; defendant notified plaintiff that it was invoking <u>force majeure</u> six days after the forty eight hours had expired. <u>Id.</u>  The Court found that defendant substantially complied with the notice provisions and that defendant's late notice was immaterial for two reasons: 1) the defendant had remained in contact with plaintiff immediately following the hurricane and had made a reasonable effort to notify plaintiff of <u>force majeure</u> as soon as possible, and; 2) that plaintiff had alleged no harm or prejudice from the late notice.  <u>Id</u>. at 68.

In order for the Court to determine whether Sunoco properly notified the Governments

and/or whether Sunoco's notice substantially complied with the provisions set forth in the Consent Decree, the Court must first consider when the notice provisions were triggered; or, rather, at which point Sunoco knew that it had a compliance problem resulting from <u>force majeure</u>.  In May 2004, during a cursory inspection of the plant that it had just purchased, Sunoco identified a potential problem with the FGRS at the Coastal Plant. Def. Pet. at 9; Def. 2006 Opp. , Ex. 4 at ¶12, Ex. 5 at ¶ 11.  The earliest communication of a potential compliance issue was contained in a letter which attached Sunoco's July, 30, 2004, Second Semi-Annual Compliance Report[7].  Pls. 2006 Mot., Ex. 1.20; Def. Pet. at p.9.  Although the report does not specifically reference <u>force</u> <u>majeure</u>, the possibility of a delay, resulting from the inefficiency of the current FGRS, with compliance is noted.  <u>Id</u>.  Arguably, any of these dates could trigger Sunoco's obligations under the force majeure notice provisions.  However, as noted by Sunoco in its Reply Brief, the Consent Decree "does not limit compliance . . . to the use of an FGRS; compliance may also be achieved through the elimination of certain streams to the flares, through the operation of the flares as 'fuel gas combustion devises', or a combination of any of these methods." Reply at 6 (footnote and citations omitted).[8]  Thus, giving Sunoco

_____

[7]The letter, dated July, 30, 2004, is from V. Steve Herzog, a facility manager of the Sunoco, Inc. Eagle Point Facility.  The letter contains several attachments relating to the Second Semi-Annual Compliance Report on the facility.  Section J of the Report delineates the progress on the Flaring Device and states the need for an eighteen month extension of the compliance date. The report identifies a potential problem with the existing FGRS, and delineates the steps Sunoco intended to take to remedy the problem, including the hiring of an independent firm to evaluate the capacity of the current FGRS.

[8]Sunoco's argument in this regard, undermines its contention that the Governments had "actual notice" of a <u>force</u> <u>majeure</u> event from as far back as July 2004.  Def. Pet. at 37-38.

the benefit of the doubt, it appears that the first time Sunoco became positively aware of a compliance problem was after it received the Zink Report on December 30, 2004 , which not only confirmed that the current FGRS was inefficient, but also presented a time frame for engineering an FGRS of an appropriate size for the facility.  Def. Opp. Ex. 4 at ¶19, Ex. 5 at ¶18; Pls. 2006 Pet. Ex. 1.21.   The Court will analyze Sunoco's compliance with the notice provision using the December 30, 2004 date.

**1. The June 3, 2005 Letter**

The Court rejects Sunoco's argument that the June 3, 2005 letter specifically invoking force majeure was timely.  This notice was sent nearly six months after Sunoco learned from the Zink Report that compliance with the deadline would be impossible.  The Governments' June 2, 2004 revocation of an agreement to extend the deadline was not the event that triggered the force majeure notice requirements because it was not the first time Sunoco had knowledge of an "event ... which causes or may cause a delay or impediment to performance"[9]; the realization that a FGRS capable of handling the Facility's flare gas flow needed to be engineered is the alleged potential "event", not the reneging of an extension.

---

According to Sunoco, the July 2004 letter contained all of the necessary information to assert force majeure.  However, the letter fails to explicitly reference force majeure, as mandated by ¶ 150 of the Consent Decree.  Sunoco cannot argue that it did not have knowledge of a force majeure until it received the Zink Report but then charge the Governments of having said knowledge.  Knowing that compliance is unlikely and knowing that compliance is unlikely due to force majeure are not the same thing.

[9]The Court makes no finding as to whether the Zink Report qualifies as a force majeure event, under the terms of the Consent Decree.

Therefore, the June 3, 2005 letter is well outside the ten days contemplated by Paragraph 150 and, consequently, fails to substantially comply with the notice provisions. Cf. Toyomenka, 771 F. Supp. at 68, supra.

### 2. The January 14, 2005 Letter

Sunoco's claim that the January 14, 2005 letter, where for the first time it formally requested an extension of the compliance deadline, substantially complies with the notice provisions of Paragraph 150, even though it referenced Paragraph 86, is unpersuasive. Sunoco avers that it invoked Commercial Unavailability because "it believed [it] to be the appropriate defense under the Consent Decree". Def. Pet. at 38. Sunoco's assertion that this letter, dated January 14, 2005, served to formally place the Governments on notice of force majeure problem and that the only "defect" with the notice was the mistaken reference to ¶86 Commercial Unavailability rather than ¶150, Force Majeure. Def. Pet. at 38. Furthermore, Sunoco asserts that had they known that there was no temporal element to commercial unavailability, it would have assuredly invoked force majeure rather than commercial unavailability.

Sunoco purposefully chose to invoke Commercial Unavailability because Sunoco "believed that the commercial unavailability defense included a temporal element". Def Reply at 9. Since the Court has already held that there is no temporal element in commercial unavailability defense, Sunoco cannot now claim *ex post facto* that it meant to assert force majeure. There appears to be no reason why Sunoco could not have asserted both

Commercial Unavailability and <u>force majeure</u> in the alternative.  Sunoco explicitly referenced

commercial unavailability.  Indeed, the notice requirements of Paragraph 86 are strikingly

similar to those of paragraph 150.  Notice of Commercial Unavailability requires that

> ". . .Sunoco must advice the Governments "as soon as Sunoco
> reasonably concludes that the delay could affect its/ their ability
> to comply with the implementation schedule... [I]n the notice
> Sunoco shall reference this Paragraph, identify the milestone
> date(s) it/they contend they will not be able to meet, provide the
> EPA and NJEPA with written correspondence to the vendor
> identifying the efforts made to secure the control equipment or
> additives, and describe the specific efforts Sunoco has taken and
> will continue to take to find such equipment or additive."

Sunoco's January 15, 2004 letter hits all of these targets and specifically references

Paragraph 86.  While the remainder of the <u>force majeure</u> notification provisions may have

been met, the failure of Sunoco to specifically identify Paragraph 150 is fatal. <u>See</u> <u>Superior</u>

<u>Oil Co. v. Transco Energy Co.</u>, 616 F.Supp. 98, 109-110 (W.D.La. 1985)(On rehearing the

Court denied defendant's motion for a new trial, stating that  "[w]hile some of the letters Pipe

Line relies upon. . . did discuss, in varying detail, two of the force majeure conditions Pipe

Line alleges. . . , none gave notice that Pipe Line considered itself relieved of its obligations

due to the occurrence of force majeure conditions.").  It cannot be the case that one can

substantially comply with a provision but fail to reference that provision; or, even more

remarkably, reference another provision.

Moreover, Sunoco's reliance on <u>Toyomenka</u>, is unpersuasive for several reasons.  First,

<u>Toyomenka</u> involved a private contract unlike the contract here, between the Government and

Sunoco.  Second, compliance in <u>Toyomenka</u> was analyzed under New York contract law, as

provided for in the contract between the parties.  Sunoco has not put forth, and the Court is unaware of, any  federal court requiring a government to show prejudice in light of a faulty force majeure notice.[10]  Third, unlike the force majeure clause in Toyomenka, the Consent Decree in this case is reviewed for substantial compliance.

Here, the force majeure paragraph is specific.  It requires that the notice be sent by certified mail and, once invoked, the Consent Decree requires the Governments to act within 30 days.  Consent Decree at ¶152.  There is no such requirement for a time-critical response from the Governments under the commercial unavailability paragraph.  Furthermore, a claim of force majeure insulates a party from incurring penalties resulting from non-compliance. In light of these factors, it is unreasonable to conclude that Sunoco substantially complied with the force majeure provision when it failed to reference this powerful defense in its January 14, 2005 letter.

Thus, because substantial compliance, not prejudice, governs the Courts review of Sunoco's notice, the Court finds that the notice was defective.  The Governments conclusion in this regard were reasonable and supported by the record in this case.  In so finding, the Court need not address whether the unavailability of the FGRS constitutes a force majeure event under the Consent Decree.

_____

[10]Indeed, where a Government is a party to a consent decree, courts have not considered prejudice in determining the adequacy of a notice of force majeure.  See, e.g., United States v. Rueth Dev. Co., 335 F.3d at 606 (failure to provide written notice of force majeure by defendant to an environmental consent decree resulted in waiver or right to obtain extension of deadline); United States v. Alshabkhoun, 227 F.3d at 936(entitlement to a consent decree extension defeated by failure to comply with force majeure notice requirements).

## II. MOTION TO SEAL DOCUMENTS

In its Motion to Seal Pursuant to L.Civ.R. 5.3(c), Sunoco petitions this Court to seal: 1) Sunoco's Reply Brief in Support of Defendant's Petition for Review of Plaintiff's August 2006 Position Letter under the Consent Decree Resolution Provisions and; 2) the Exhibits 2.1-2.26 in support thereof and Plaintiff's Opposition to Sunoco's Petition for Review of Plaintiff's August 2006 Position Letter under the Consent Decree Dispute resolution Provisions and the Exhibits A.1-A.25 in support thereof. In support of its motion, Sunoco states that the documents qualify for protection as confidential business information because they relate to Sunoco's internal process for approving and implementing major capital projects, including information on Sunoco's criteria for selecting vendors.[11] Defendant's Motion to Seal ("Def. Mot. Seal") at 2-3. Indeed, the documents in question were submitted to the Governments by Sunoco as Confidential Business Information, pursuant to 40 C.F.R. §§ 2.201-2.301. Def.Mot.Seal at ¶3. In its Brief in Reply To Plaintiff's Opposition To Sunoco's Motion To Seal Materials (hereinafter "Def. Reply"), Sunoco claims that because the Governments have not issued a "preliminary determination" as to the confidentiality of the documents, nor have conducted a hearing as required by 40 C.F.R. PART 2, SUBPART B, this Court is without jurisdiction to make any determination as to whether the documents qualify for protection under L.Civ.R. 5.(c). Consequently, it is unclear to the Court whether Sunoco seeks a determination under L.Civ.R. 5.3(c) or whether Sunoco seeks an order

_____

[11]Pursuant to L.Civ.R. 7.1(d)(4), Sunoco filed a Statement in Lieu of a Brief in support of its Motion.

15

compelling the EPA to undertake a Part 2 hearing.

As a preliminary matter, in the interest of judicial economy, the Court will address the ripeness issue raised by Sunoco, notwithstanding Sunoco's failure to raise this argument in its moving papers.  In this connection, the Court finds that Sunoco's contention that this Court does not have the authority to render a decision on its motion to seal is without merit.[12] The Code of Federal Regulations provides for situations where the E.P.A. is required to act on a claim of confidential business information:

> (a) Situations requiring action. This section prescribes procedures to be used by EPA offices in making initial determinations of whether business information is entitled to confidential treatment for reasons of business confidentiality. Action shall be taken under this section whenever an EPA office:
>
> (1) Learns that it is responsible for responding to a request under 5 U.S.C. 552 for the release of business information; in such a case, the office shall issue an initial determination within the period specified in § 2.112;
>
> (2) Desires to determine whether business information in its possession is entitled to confidential treatment, even though no request for release of the information has been received; or
>
> (3) Determines that it is likely that EPA eventually will be requested to disclose the information at some future date and thus will have to determine whether the information is entitled to confidential treatment. In such a case this section's procedures should be initiated at the earliest practicable time, in order to increase the time available for preparation and submission of comments and for issuance of determinations, and to make easier the task of meeting response deadlines if a

---

[12] Sunoco broke "the cardinal rule of motion practice" by raising this argument in its Reply brief.  See Dana Transport, Inc. v. Albeco Finance, LLC, 2005 WL 2000152 (D.N.J. 2005).; see also Dehaarte v. City of Newark, 2006 WL 561925 at *2 (D.N.J. 2006).

request for release of the information is later received under 5
U.S.C. 552.

40 C.F.R. §2.204(a)

Sunoco asserts that the EPA must first make "a prelimiary determination" as prescribed by 40 C.F.R. §2.204(d), with respect to the confidentiality of each claim.  In addition, where a claim of confidentiality is substantiated by EPA, the agency must then notify any affected businesses and give them the opportunity to comment, pursuant to 40 C.F.R. § 2.204(e).  Conversely, where the agency issues a denial as to the confidentiality of the information, it is required to set forth in detail the basis for its denial.  40 C.F.R. § 2.204(f)(2)  Sunoco asserts that the Governments use of the documents submitted under the auspices of CBI, demonstrates the EPA's "desire to determine" the confidentiality of the documents without having completed the requirements of 40 C.F.R. Part 2, Subpart B.  Accordingly, Sunoco argues that it has been denied the procedural rights guaranteed by the C.F.R.  Sunoco miscontrues the Code.

As noted in the sur-reply submitted by the Governments, a review of the documents by the E.P.A. in this case is not mandatory.  The Governments proffer that they do not "desire to determine" the confidentiality of the documents in question and only used the documents in connection with the action generated in this Court by Sunoco.  Sur-Reply at 12.  The other two instances under 40 C.F.R. §2.204(a), specifically 2.204(a)(1) and (3), are inapplicable here, as the Court is unaware of any request for the release of this

17

information.[13]  Thus, there is nothing prompting the EPA to undertake a review of the documents in this case.  "While it would be possible to issue confidentiality determinations under a procedure which was begun as soon as business information was first received by EPA, rather than waiting until the time a particular item of information was requested under 5 U.S.C. 552, this would be extremely inefficient, because of the likelihood that no occasion for disclosing the information would ever arise."  40 Fed. Reg. 21987, 21988 (May 20 1975).  Moreover, the "EPA may disclose any business information in any manner and to the extent ordered by a Federal Court" 40 C.F.R. §2.209(d)  Indeed, the Court may determine the confidentiality of the documents submitted in connection with a Court proceeding.  "This rule shall govern any request by a party to seal, or otherwise restrict public access to, any materials filed with the Court or utilized in connection with judicial decision-making."  L.Civ.R. 5.3 (a)(1).

　　L.Civ.R. 5.3(c)(2) provides that a party must address the following factors when moving to exclude documents from the public eye:

> (a) the nature of the materials or proceedings at issue, (b) the legitimate private or public interests which warrant the relief sought, (c) the clearly defined and serious injury that would result if the relief sought is not granted, and (d) why a less restrictive alternative to the relief sought is not available.

---

[13]Accordingly, the cases cited by Sunoco in support of this motion, Northwest Coal. for Alternatives for Pesticide v. E.P.A., 254 F.Supp.2d 125 (D.D.C. 2003) and Reliance Elec. Co. v. Consumer Product Safety Comm'n, 924 F.2d 274 (D.C.Cir. 1991) are unpersuasive as they involve the EPA's obligations with respect to documents which were the subject of requests to the EPA for production pursuant to the Freedom of Information Act, 5 U.S.C. 552.

18

The party seeking protection bears the burden of "showing that the material is the kind of information that courts will protect" and that "disclosure will work a clearly defined and serious injury to the party seeking disclosure". In re Cendant, 260 F.3d 183,194 (3d Cir. 2001). Moreover, "[i]n delineating the injury to be prevented, specificity is essential. Id. at 194. Thus, Sunoco bears the burden of "justifying the confidentiality of each and every document sought to be covered by a protective order". Cippolone v. Liggett Group, Inc., 785 F.2d 1108, 1122 (3d Cir. 1986). Sunoco has not detailed with specificity the reasons protection is justified as to each document. Sunoco's broad statements under L.Civ.R. 5.3(c) are deficient and render this Court unable to rule on the motion at this time. The Court will dismiss Sunoco's motion without prejudice and, in the interest of fairness, permit Sunoco to re-file its motion consistent with the Rules of this Court and the body of case law within this Circuit.

An appropriate Order will follow.

 dated: June 7, 2007

/s/Joseph H. Rodriguez
_____   HON. JOSEPH H. RODRIGUEZ
United States District Judge